UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case 5:25-cr-20543 |
| | ) |
| Cemhan "Jimmy" Biricik, | ) |
| Dr. Martin Perlin, | ) |
| | ) |
| Defendants. | ) |

**SUPPLEMENTAL MOTION FOR MODIFICATION OF POST-INDICTMENT ASSET SEIZURE; REQUEST FOR *MONSANTO* HEARING**

Defendant Cemhan Biricik ("Mr. Biricik"), by counsel, respectfully renews his request for a *Monsanto* hearing. This Supplemental Motion builds on his September 30, 2025 motion to modify post-indictment asset seizure, to incorporate newly obtained information from the government's seizure warrants and supporting affidavits.

**I.  INTRODUCTION**

The government has executed an extraordinarily broad pretrial seizure—freezing every bank account, investment account, vehicle, and major asset associated with Mr. Biricik, including assets acquired years before the alleged conduct. This sweeping restraint has deprived. Biricik of the ability to retain counsel, support his family, or pay for basic living expenses. Because substantial categories of the seized assets lack any demonstrated nexus to the alleged offense and because the restraint violates both due process and the Sixth Amendment, a *Monsanto* hearing is required.

**II. BACKGROUND**

    A.  <u>Charges</u>

Briefly, on July 22, 2025, Mr. Biricik and Codefendant Martin Perlin, M.D. were indicted in the Eastern District of Michigan on one count of Conspiracy to Commit Health Care Fraud under 18 U.S.C. § 1349, and fifty-eight (58) counts of individual acts of health care fraud under 18 U.S.C. § 1347. The Indictment included a forfeiture count under 18 U.S.C. §§ 981(a)(1)(C), 982(a) and 28 U.S.C. § 2461, claiming all gross proceeds it alleges traceable to the alleged offenses. The government alleges the defendants, by its operation of a business called "FastLab" from about September 2021 to July 2025, billed Medicare, Medicaid, and other insurance entities for Covid tests without complying with government regulations. The government alleges the defendants accrued more than $50 million in illicit proceeds from insurance companies.

    B.  <u>Pre-Trial Seizure</u>

In Case 2:25-mc-50997 in the Eastern District of Michigan, the government sought and obtained pre-trial seizure of a wide range of assets - bank accounts, properties, vehicles – which it claimed could be traced directly or indirectly to the allegedly illicit proceeds of the health care fraud. These included: seven automobiles, one airplane, three Morgan Stanley accounts, six JP Morgan Chase accounts, five Truist bank accounts, one SunTrust account, two Social Financial (SoFi) accounts, one JP Morgan Chase brokerage account and a Robinhood brokerage account.

A summary outline of the government's tracing is attached. <u>See</u> Exhibit A. The assets specifically held by Mr. Biricik include: a Cirrus airplane, a Lamborghini, a Bentley, two Ford vehicles, a BMW, a Rivian, and an Audi, the three Morgan Stanley accounts, one Truist bank

account, two SoFi accounts and the Robinhood brokerage account. The government has also filed a *lis pendens* against Mr. Biricik's Boca Raton, FL residence.[1]

### C. Biricik Financial Status

As confirmed in the submitted affidavit, Mr. Biricik currently has no unrestrained assets. See Exhibit B. The government's seizure has left him wholly without funds to support his dependents or finance his legal defense.

### III. LEGAL STANDARDS

Health care fraud carries with it specific authority for forfeiture. Convictions for health care fraud subject him to a forfeiture penalty of the "gross proceeds traceable to the commission of the offense," whether "directly or indirectly." 18 U.S.C. § 982(a)(7). See *United States v Jankowski*, 2024 U.S. App. LEXIS 26960, at *19 (6th Cir Oct. 23, 2024, No. 23-1404). If a defendant would not have derived certain funds or property but for committing the criminal offense, then these assets are "tainted" for purposes of the statute and are subject to forfeiture. See, e.g., *United States v. Warshak*, 631 F.3d 266, 332-333 (6th Cir. 2010).

Further, courts may order pretrial seizure of property subject to forfeiture upon a health care fraud conviction. See 21 U.S.C. § 853. The Supreme Court has upheld the pretrial seizure of a criminal defendant's assets if such seizure is based on a finding of probable cause to believe the assets are forfeitable. *United States v. Monsanto*, 491 U.S. 600, 615 (1989). This court has held: "The government bears the burden in the first instance to show both probable cause prongs, including that the seized funds are traceable to the charged crimes.... Only upon meeting those two probable cause prerequisites is the government entitled to pretrial seizure "to preserve the

---

[1] The government has also filed an Administrative Seizure against some of Mr. Biricik's assets (Department of Justice Notice Letter ID 663707, dated September 24, 2025). Mr. Biricik has filed a claim in that matter.

3

availability of property" subject to forfeiture. *United States v Kazkaz*, 2023 US Dist LEXIS 111532, at *16-17 (ED Mich June 28, 2023, No. 23-20022).

An indictment and warrant affidavit may be evidence of probable cause of the underlying offense. *United States v. Kaley*, 579 F.3d 1246, 1259 (11th Cir. 2009), cited in *Kazkaz, supra*. See also *United States v Rashid*, 2017 US Dist LEXIS 165945, at *5 (ED Mich Oct. 6, 2017, No. 17-20465). However, in the Sixth Circuit, a defendant is entitled to a hearing to determine whether probable cause for forfeiture exists. In *United States v Jamieson*, 427 F3d 394, 405-406 [6th Cir 2005, the Sixth Circuit held:

> [A] hearing is necessary...when the defendant can (1) "demonstrate to the court's satisfaction that she has no assets" and (2) "make a prima facie showing of a bona fide reason to believe [it is error to conclude] the restrained assets 'constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.'"

*Id.* at 646, 647. "Forfeiture . . . is limited to property the defendant himself *actually acquired* as the result of the crime." *Honeycutt v. United States*, 581 US 443, 448 (2017). Forfeiture is limited to property that the defendant <u>actually</u> acquired from the offense. *Id. See United States v Sexton*, 894 F3d 787, 798 (6th Cir 2018). On this basis, pretrial seizure may be narrower in scope than that afforded by a forfeiture order following a final conviction. Evidence of an alternative source of the seized assets (alternative income, etc.) may undercut such a conclusion. See *United States v $59,920 United States Currency*, 2025 US Dist LEXIS 169699, at *37 (WD Mich Mar. 25, 2025, No. 1:23-cv-269), citing *United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00)*, 730 F.3d 711, 718 (7th Cir. 2013).

## IV.   THE GOVERNMENT TRACING

The government affidavits submitted to support its pre-trial seizure warrants outlines an elaborate network of accounts by which health care payments traveled since FastLab registered

to accept government payments on February 8, 2022 and June 30, 2022. (The government acknowledges Fast Lab received no payments prior to those dates.) It charts a history of accounts, opening and closing at various dates, some of which directly received the payments (Tier One accounts), others which received transfers from Tier One accounts (Tier two accounts) and yet another layer that received transfers from Tier Two accounts (Tier three accounts). See Exhibit A. Based on this tracing, the government sought and obtained a list of assets it believes represents proceeds of the alleged fraud.

In his September 30, 2025 motion, Mr. Biricik asserted family need and hardship as a basis, in part, for modification of the pre-trial seizure of assets. He also raised issues as to the strength of the government's affirmative case on the merits. He maintains all those arguments here. But based on the specific assertions in the government warrants supporting the pre-trial seizures, Mr. Biricik also objects to seizure of the following assets as lacking sufficient nexus to alleged offense proceeds:

- Morgan Stanley Account x1145        $4,497,385.71
- Morgan Stanley Account x1585        $     10,000.00
- Morgan Stanley Account x1785        $     79,965.72
- Truist Bank Account x1798           $     17,177.48
- Sun Trust Bank Account x2295        $     29,638.88
- Robinhood Account x0938             $1,105,228.22 (portfolio value)
- Social Financial Bank Account x7728 $      2,680.13
- 2023 Audi Q3

## V. DEFENSE TRACING OBJECTIONS

Mr. Biricik claims the government has failed to establish traceability as to certain assets. However, by raising these claims, Mr. Biricik does not concede the remaining assets are subject to seizure and specifically does not concede any probable cause exists that he engaged in any health care fraud whatsoever. But traceability is patently absent regarding certain of these assets.

In its complicated tracing pattern, the government includes several Biricik accounts that were established prior to the beginning of the alleged offense conduct here. Specifically, JPMorgan Chase Bank Account 672082663, in the name of Mavric Marketing Associates LLC (Mavric x2663), was opened on December 11, 2020. Mavric Marketing Associates LLC was established in May of 2020. Notwithstanding whether it received deposits from so-called "Tier One" accounts receiving direct payments, Mavric Marketing had an independent customer base and generated its own income for two years prior to this alleged offense conduct. Truist bank account x1798 was first opened on July 5, 2019. The Robinhood brokerage account was opened on July 29, 2019. The SunTrust bank account x2295 was opened on December 12, 2020. Fast Lab did not start receiving any direct reimbursements until, at the earliest, February 2022 when it was first registered with the government to receive reimbursements.

The government provides no information as to the opening of the three Biricik Morgan Stanley accounts it seized. It states: "Evidence gained from grand jury subpoena service" indicate these accounts were funded with fraud proceeds from the Chase and Robinhood brokerage accounts. It apparently reaches this conclusion because, it claims, Mr. Biricik emailed his Chase and Robinhood statements to Morgan Stanley when he opened those accounts. But it provides no details whatsoever to support any of these factual assertions, or why they compel a conclusion all proceeds in the Morgan Stanley accounts were tainted proceeds.

The government deems the Robinhood brokerage account tainted because it received $958,000 from the Mavric x2663 account from January to August 2023, without addressing the fact the Robinhood account predated the onset of the alleged offense by almost three years (it was opened on July 29, 2019) or that the Mavric account itself held untainted funds. The

6

government does not present any information as to the deposits to Robinhood brokerage preceding January 2023.

Truist bank account x1798 predated the offense conduct by three years; the government contend it received 5.5 million from Tier One accounts x8615 and x3722 but acknowledged it only had records for this account from January 2023 to November 2024. SunTrust Biricik account x2295 opened in December 2020. The government contends it received 100K from a Tier One account (Truist x1808) which itself only opened in October 2024. That means for four years Truist x2295 operated on wholly independent funds, surely undercutting probable traceability.

Biricik Social Financial Bank Account x7728 received $75,000 from the Robinhood account. The government does not mention when the account was opened, or when the deposit was made. In any event, Robinhood already had significantly mixed funds, including deposits from accounts (e.g., Mavric x2663) themselves carrying mixed funds. Biricik Social Financial Bank Account x4602, whose start date is also unknown, received $62,000 from Mr. Biricik's personal Chase checking account (x5125). No information is provided as to the sources of its other funds.

Simply put, for a substantial number of these seized assets, the government relies merely on "comingling" to support seizure. In essence, it contends if any portion of tainted funds entered an account, all other funds in it are tainted, notwithstanding their source. Such might be the case if the defendant was charged with money laundering, as the comingling serves the very purpose of the money laundering offense – to hide tainted funds. But no money laundering is charged in this case. There were no procedures taken to disguise the transfer of funds. Compare *United States v. Coffman*, 574 F. App'x 541, 561 (6th Cir. 2014 ("Commingling is enough to expose the legitimate funds to forfeiture, if the commingling was done for the purpose of concealing the

7

nature or source of the tainted funds"), Here, with these assets, funds were transferred to existing older accounts for access, for investment or other purposes. And even in straightforward money laundering charges, tracing may still be required. See *United States v. Jamieson*, 427 F.3d at 404-05 (noting that the "Sixth Circuit has never ruled on what the tracing requirements are for § 1957 money laundering" and declining to rule on the issue).

## VI. DEFENSE MERIT OBJECTIONS.

The government also falls short in its probable cause showing on the substantive offense. See *United States v Kazkaz*, 2023 US Dist LEXIS 111532, at *16-17 (both probable cause prongs must be met to support seizure).

The government alleged FastLab deliberately billed Medicare, Medicaid and other insurance entities for Covid testing reimbursements using higher reimbursement codes than those it was entitled to use. The government alleged FastLab mailed out and billed for rapid Covid tests billed at rates that apply only when rapid tests were administered and read by the Lab (87811), when they were not. It alleges FastLab billed for PCR tests claiming they had collected and analyzed samples at the Lab which had been reviewed and recommended by an M.D. when they had not (using rates U0003, U0005, G2023, 87635 and 87811). The government claims FastLab received over $50 million in wrongful reimbursements.

But many of the government's allegations are in error. The government's theory of offense conduct contains substantial factual inaccuracies and omits critical information. These include:

A. <u>Rapid Test Billing (87811)</u>

FastLab initially coded certain unreturned test kits as 87635 based on automated assumptions of timely receipt. Upon reconciliation, FastLab voided those claims to comply with CMS Program Integrity Manual § 3.3.2.1, which requires that services be performed before

8

billing. The government does not account for these voided claims.

    B. <u>PCR Test Billing</u>

FastLab frequently billed PCR services under 87635—a lower rate—despite being entitled to Evaluation and Management codes 99213–99215. FastLab in fact underbilled in certain cases. This undermines the theory of willful inflation or fraudulent billing.

    C. <u>Delayed Returns</u>

Patients routinely returned test kits weeks or months after initial distribution, at which point FastLab had already voided the associated claims. FastLab incurred losses from uncompensated PCR tests, for which the government does not account.

    D.  <u>Complexity of Health Care Billing</u>

Billing errors—even systemic ones—do not constitute willful fraud. FastLab can demonstrate legitimate losses and substantial compliance efforts inconsistent with the government's theory of intentional wrongdoing. The government itself notes that Covid test insurance coverage rules changed dramatically over the course of the pandemic. There were periods of time a provider order was required; then period of times when it was not, or at least not required for an initial Covid test. There were periods of time test coverage required showing the test was necessary for management of a specific medical problem. Coverage then expanded to include over-the-counter antigen tests. After the Covid public health emergency ended in May 2023, over-the-counter tests were no longer covered. Only tests ordered by a doctor and conducted in an office or pharmacy were covered.

**VII.**    <u>**SIXTH AMENDMENT AND DUE PROCESS PROTECTION.**</u>

Due process and the Sixth Amendment require a hearing when a defendant makes a threshold showing that government restraint of assets has impaired the ability to retain counsel or

secure essential defense resources. See *United States v. Monsanto*, 491 U.S. at 615–17 ("[I]f the Government may, prior to trial, freeze assets needed to retain counsel of choice, then the defendant must be afforded a hearing to challenge the restraint."); *Kaley v. United States*, 571 U.S. 320, 335 (2014) (recognizing the "*constitutional line*" between tainted and untainted assets and noting that defendants must be provided procedures that "*adequately protect their Sixth Amendment right to counsel*" (emphasis added)); *Luis v. United States*, 578 U.S. 5, 12–13 (2016) ("The pretrial restraint of legitimate, untainted assets *needed to retain counsel of choice* violates the Sixth Amendment"; defendants must have a "*meaningful opportunity*" to contest the restraint); *United States v. Jamieson*, 427 F.3d at 404–05 ("Where a defendant makes a colorable claim that frozen assets are untainted and necessary to fund his defense, the district court must hold a hearing to determine the validity of the restraint."); *United States v. Kahn*, 2014 WL 12791966, at *3 (E.D.N.Y. 2014) ("Defendants are entitled to an evidentiary hearing to demonstrate that the restrained assets are untainted and necessary for counsel, and the Court must permit such a showing before continuing the restraint."); *United States v. Petters*, 2009 WL 2051881, at *3 (D. Minn. 2009) ("A *Monsanto* hearing is required if the defendant shows that the asset freeze impairs his ability to retain counsel or mount a defense."). Accord: *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (forfeitures and related restraints may not be "*grossly disproportionate*" to legitimate government objectives).

Mr. Biricik has averred he is without assets and that his ability to continue to mount a legal defense in this case is undercut by the massive government seizure. He cannot fund ongoing legal representation, retain experts, conduct independent forensic analysis, or pay for other necessary litigation expenses. A hearing is warranted here because of the constitutional issues clearly raised by the government's overly broad asset seizure. Financial restraints may not be

10

"grossly disproportionate" to the government's legitimate interest. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

## VIII. <u>ACUTE FAMILY NEED</u>.

As presented in his initial Motion, Mr. Biricik is deeply committed to caring for his family members. His three children are completing college and starting their adult lives but still depend on him for support. Mr. Biricik's mother worked as a high school teacher, department chair, and curriculum writer in the world languages. She spoke four languages and worked for the United Nations. She was employed by the Jersey City Board of Education and is now retired. Mr. Biricik provides her assistance. Mr. Biricik's mother-in law was diagnosed with Parkinson's Disease last year and he also provides her with financial support. Mr. Biricik has one aunt who is hospitalized with a terminal illness. Mr. Biricik provides her with support as well. Mr. Biricik estimates average monthly family expenses of $31,566. With all his assets seized, Mr. Biricik has absolutely no funds available to support his wife and family members, nor to provide for his legal defense.

Courts have allowed payments from seized funds to cover a defendant's living expenses, including family member educational costs. See, e.g., *United States v Petters*, supra, 2011 US Dist LEXIS 13357, at *6. Financial need is relevant to the issue of whether a hearing is required. *United States v Prejean*, 2005 US Dist LEXIS 36511, at *7 (ED La Oct. 19, 2005). The issue is whether the unseized assets are adequate to provide "for reasonable legal and living expenses." *United States v. Jones*, *supra*, 160 F.3d. at 649. Here, they clearly are not.

A defendant "may be entitled to a hearing concerning the restraint of the subject properties to avoid an erroneous deprivation at a meaningful time." *United States v Jamieson*, 427 F3d at

11

405-406, citing 641 (10th Cir. 1998). Such a hearing may be necessary to satisfy due process. *United States v Kahn*, 890 F3d 937, 940 (10th Cir 2018).

## CONCLUSION

The government has not met its burden to demonstrate probable cause that the full scope of the seized assets is traceable to the charged offenses. Substantial evidence shows many of the restrained accounts pre-date the alleged conduct, contain mixed or independently derived funds, or lack any substantiated nexus to purported fraud proceeds. The breadth of the government's seizure—executed without meaningful tracing, without regard to alternative legitimate income streams, and without distinguishing between tainted and untainted assets—has resulted in a sweeping and constitutionally impermissible deprivation of every resource Mr. Biricik requires to support his family and to defend himself. The continued restraint of untainted or insufficiently traced assets, without affording Mr. Biricik a meaningful opportunity to contest the government's assertions, violates Mr. Biricik's due process and the Sixth Amendment rights.

The continued restraint prevents Mr. Biricik from securing counsel, funding expert assistance, or supporting his dependents—all consequences the Supreme Court has identified as constitutionally intolerable absent rigorous procedural safeguards. Accordingly, Mr. Biricik respectfully requests the Court to lift the pretrial restraints on the identified assets, or, at minimum, to grant a full evidentiary *Monsanto* hearing to determine whether probable cause exists to continue the seizure as to any disputed assets.

Dated:  November 18, 2025  
       New York, NY

Respectfully submitted,

*Jeff Chabrowe*  
**JEFFREY CHABROWE, ESQ.**  
**LAW OFFICES OF JEFFREY CHABROWE**  
521 Fifth Avenue, 17th Floor  
New York, NY 10175  
(917) 529-3921

jeff@chabrowe.com

cc: Regina R. McCullough, Esq.
regina.mccullough@usdoj.gov
Kenton Craig Welkener, Jr.
kenton.welkener@usdoj.gov